# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

FREDERICK G. BACK,
    Plaintiff,

  vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-988

Dlott, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the

Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum. (Doc.

12).

## I.  Procedural Background

Plaintiff filed applications for DIB and SSI in April 2008, alleging disability since

October 2, 2006,[1] due to problems with his shoulders and neck with radiculopathy into his arms,

bilateral carpal tunnel syndrome, degenerative disc disease of his back and legs, depression, and

anxiety. These applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted five hearings in 2010 and 2011 before administrative law

judge (ALJ) Christopher B. McNeil. Plaintiff appeared and testified at all five hearings.

---

[1]Plaintiff asserts in his Statement of Errors and reply brief that at the ALJ hearings he amended his disability
onset date to December 31, 2009, which is his date last insured. *See* Doc. 6 at 1; Doc. 12 at 1-2 (citing to Tr. 135,
240). Review of the hearing transcripts reveals that plaintiff did not amend the onset date, but merely offered to do
so if the ALJ found him "disabled" at the hearings. *See* Tr. 135, 240. Plaintiff's alleged disability onset date
therefore remains October 2, 2006.

Various medical experts (MEs) testified at these hearings and a vocational expert (VE) appeared and testified at the final ALJ hearing. On July 19, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

2

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.   *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements of the Social Security Act through December 31, 2009, but not thereafter.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 2, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease, bilateral carpal tunnel syndrome, status post right shoulder arthroscopy, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).   Specifically, he can lift 20 pounds occasionally and 10 pounds frequently; push or pull 10 pounds using hand or foot controls; only occasional[ly] lift overhead bilaterally; sit, stand, or walk about 6 hours each in an 8-hour workday; never climb ladders, ropes, or scaffolds; no more than occasionally climb ramps or stairs; no more than occasionally crawl;

3

no more than frequently stoop, kneel, or crouch; and no more than occasionally reach on the right side. Due to his mental impairments, work must be limited to simple and some detailed work with not more than occasional contact with the public, coworkers, and supervisors.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1958 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 2, 2006, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 13-28).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2]Plaintiff's past relevant work was as a machine setter, a welding inspector, and a fabricator. (Tr. 26, 112-13).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as a cleaner, with 400 jobs locally and 120,000 jobs nationally; a general factory worker, with 500 jobs locally and 160,000 jobs nationally; and a packer, with 700 jobs locally and 150,000 jobs nationally. (Tr. 26-27, 114-15).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff raises five assignments of error: (1) the ALJ erred in formulating his residual functional capacity (RFC) by not including supported physical limitations; (2) the RFC formulation failed to account for supported mental limitations; (3) the ALJ did not properly

5

weigh the medical opinions of record; (4) the ALJ erred in discounting plaintiff's credibility; and

(5) the ALJ erred at Step Five of the sequential analysis by presenting improper hypotheticals to

the VE.

1. Whether the ALJ erred in formulating the residual functional capacity by not including certain physical limitations.

Plaintiff argues that if he is limited to only "occasional" handling, he would be unable to

perform the unskilled jobs identified by the VE.   (Doc. 6 at 6, citing Tr. 118-19, 121).   Plaintiff

asserts the ALJ erred by not including in the RFC a limitation for occasional handling given the

following medical evidence: (1) radiculopathy of his neck affecting the use of his hands and

arms; (2) a February 2008 rehabilitation evaluation, which revealed he had only occasional

dexterity on the right; (3) the opinion of a state agency reviewing physician to which the ALJ

gave "significant weight"; and (4) EMG findings supporting carpal tunnel syndrome.   (Doc. 6 at

5).

*a. Evidence of Radiculopathy*

The record includes findings of a positive Neer sign on October 10, 2008 (Tr. 818) and a

positive Spurling's test on April 21, 2008.   (Tr. 850).   ME Laura M. Rosch, D.O., testified that

these signs are indicators of possible nerve root impingement and radiculopathy.   (Tr. 226-27,

233, 817-18).[4]   Michael Stock, M.D., the nonexamining state agency physician to whose opinion

the ALJ gave "significant weight," failed to address these clinical results in his July 2008 RFC

assessment.   (Tr. 882-883).   Plaintiff argues the ALJ erred by failing to acknowledge that Dr.

Stock's RFC assessment did not note these positive Spurling and Neer signs on exams.

---

[4]To the extent plaintiff's argument on this score relates to the weight given to the medical opinions of record, the Court will address this *supra*.

In his decision, the ALJ discussed the positive Spurling's test, but not the positive Neer test. (Tr. 17). Although this evidence was not fully addressed by the ALJ or acknowledged by Dr. Stock, any error in this regard is harmless because this clinical evidence, in itself, does not establish that plaintiff has functional limitations greater than those found by the ALJ. Dr. Rosch - who repeatedly stated that she was not an orthopedist - testified only generally as to the positive Spurling's test and stated that the test was "a clinical indicator that there is the possibility of nerve root impingement." (Tr. 226). However, she never expressed an opinion that plaintiff had functional limitations due to these findings. (Tr. 226). Moreover, Dr. Langenderfer, the treating physician who noted these findings, did not opine that they functionally limited plaintiff. To the extent plaintiff asserts the ALJ erred by not discussing these findings, this argument is unavailing as it is well-established that ALJs are not required to discuss each piece of evidence in the record for their findings to stand. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). In the absence of any medical opinion of record that plaintiff has physical limitations not accounted for by the ALJ's RFC formulation, these two clinical findings are not a sufficient basis for overturning his decision.[5]

Insofar as plaintiff appears to assert the ALJ erred because Dr. Rosch "commented on the C-6 radiculopathy extending into the right arm," while Dr. Stock did not, the Court finds plaintiff's argument difficult to ascertain. (Doc. 6 at 5). While Dr. Rosch testified that the medical evidence of record included findings that plaintiff had difficulty reaching with his right extremity – "the same extremity that he has C6 radiculopathy" – Dr. Rosch's mere mention of

---

[5]The Court further notes that the majority of the physical examination evidence reveals negative Spurling test results and otherwise normal findings. *See, e.g.*, Tr. 818 (in October 2006, Dr. Langenderfer observed full range of motion with no tenderness in neck and negative Spurling's sign); Tr. 823, 825, 829, 841, 844, 847 (same in January 2007 through February 2008).

7

this condition hardly qualifies as an opinion on plaintiff's functional abilities. (Tr. 232-33). Review of this portion of the transcript reveals that Dr. Rosch was simply summarizing examination findings from Dr. Langenderfer's treatment notes. *See* Tr. 230-33. The ALJ thoroughly discussed this evidence and it was clearly considered by Dr. Stock. *See* Tr. 17, 883, 887. Accordingly, the Court finds no error in this regard.

     *b. Other Evidence*

     The February 2008 evidence cited by plaintiff is a report from a physical therapist to Matthew Langenderfer, M.D., the orthopedic surgeon who performed a right shoulder arthroscopy with subacromial decompression, rotator cuff repair, and AC joint resection on plaintiff in August 2007. (Tr. 781-82). *See also* Tr. 832-33. Plaintiff received four weeks of work hardening and the physical therapist reported that plaintiff's upper extremity dexterity was "increasing occasional." (Tr. 782). This was an improvement from a prior evaluation where plaintiff's dexterity was limited to "occasional" use of his right upper extremity and "seldom" use of his left. (Tr. 775). The February 2008 therapy evaluation noted that plaintiff was capable of lifting approximately 25 pounds and carrying 35 pounds; the therapist noted that plaintiff was making progress; and plaintiff's prognosis was "good." (Tr. 782).

     Dr. Stock, the nonexamining state agency physician, noted the above dexterity finding in his assessment and that plaintiff had shown "dramatic improvement" since his initial physical therapy visit. (Tr. 887). Dr. Stock opined that plaintiff had a limited ability to reach on his right side, but was *not* limited in his "handling" ability. (Tr. 884).

     This evidence does not support plaintiff's contention that he is limited to only occasional handling, which would prevent his performance of unskilled jobs. Plaintiff has not identified

any evidence, aside from the physical therapist's notes reflecting his significant improvement, that would support any greater limitations on his manipulative abilities than those provided by the ALJ's RFC formulation. Moreover, Dr. Langenderfer opined in May 2008, that while plaintiff had numbness in his right hand, his right rotator cuff repair was successfully healed and plaintiff could return to work. (Tr. 848). The ALJ adopted the reaching limitation imposed by Dr. Stock and limited plaintiff to no more than occasional reaching on the right side. (Tr. 16, 22). The ALJ reasonably found the record did not support plaintiff's contention that he lacks the manual dexterity to perform unskilled work. (Tr. 25).

Plaintiff also contends the ALJ erred by not considering the limitations from carpal tunnel syndrome and by stating there was no electrodiagnostic testing verifying plaintiff's carpal tunnel syndrome (Tr. 18, 22) when the record includes a March 2000 electrodiagnostic medicine consultation report verifying the carpal tunnel syndrome diagnosis. (Tr. 1026-28). Plaintiff states that Dr. Rosch's opinion included consideration of the EMG findings (Doc. 6 at 6, citing Tr. 234), which also supports his contention that the ALJ should have included an RFC restriction on only occasional handling.

The Court finds the ALJ's misstatement is harmless error as the ALJ found plaintiff to have the severe impairment of carpal tunnel syndrome (Tr. 13) and there is no evidence that the impairment causes functional limitations greater than those included in the ALJ's RFC formulation. While plaintiff is correct that Dr. Rosch acknowledged the EMG findings showing carpal tunnel syndrome, plaintiff ignores the balance of Dr. Rosch's testimony that given the old age of the EMG findings and the lack of evidence of atrophy, disuse of the extremity, and muscle weakness, she did not think it was clinically significant "given that it didn't result in significant

9

physical examination and functional limitations." (Tr. 237). No medical source in the record

opined that plaintiff's carpal tunnel syndrome resulted in functional limitations. The ALJ

determined that plaintiff's carpal tunnel syndrome is a severe impairment, but reasonably

determined there was no basis for any manipulative limitations based thereon. Accordingly, the

undersigned finds that the ALJ committed no error in formulating plaintiff's RFC.

    2. <u>Whether the ALJ erred in weighing the medical opinion evidence.</u>

      It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight. "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference."). "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th

Cir. 1994).

      "Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]

case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the

ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Plaintiff argues the ALJ erred as follows: (1) the ALJ should have more fully explained his decision to discount Dr. Rosch's testimony and RFC assessment as she opined that plaintiff met or equaled Listing 1.04 (Tr. 225, 1403); (2) the ALJ erred in rejecting the opinion of plaintiff's treating physician, Ashok Kejriwal, M.D.; (3) the ALJ should have given less weight to the opinions of the nonexamining state agency doctors, Michael Stock, M.D., and Leslie Rudy,

11

Ph.D., as their opinions were based on incomplete reviews of the record; (4) the ALJ should have

given greater weight to the testimonial opinion of ME George Rogers, Ed.D.; and (5) the ALJ

erred by discounting the opinion of plaintiff's treating psychiatrist, Peter Ramirez, M.D.[6]  (Doc.

6 at 6-12).   For the following reasons, the Court finds the ALJ's determinations as to Dr. Rosch,

Dr. Kejriwal, and Dr. Rogers' opinions are substantially supported by the record evidence, while

his findings as to Dr. Rudy and Dr. Ramirez's opinions are not.

   *a. Dr. Rosch*

   The ALJ gave "some weight" to the opinions of Dr. Rosch as reflected in her

interrogatory responses and testimony.   (Tr. 23, citing Tr. 223-41, 1399-1404).   The ALJ

explained he gave less weight to her testimony that plaintiff met or equaled Listing 1.04A

because it was based on unreliable evidence.   Specifically, the ALJ noted that plaintiff admitted

lying during his June 2008 consultative examination with David Chiappone, Ph.D. (Tr. 858-63),

and that Dr. Rosch's opinions were based, in part, on this examination report.   (Tr. 23).   The

ALJ also noted that Dr. Rosch's opinion - that the combination of plaintiff's mental and physical

impairments "would remove ability to function to the extent of Listing 1.04A" (Tr. 1403) - was

outside the medical area of her expertise as an internist.   (Tr. 14).   The undersigned finds that

the ALJ's determination in this regard is substantially supported by record evidence.

   It is undisputed that Dr. Rosch based her opinions, in part, on plaintiff's statements to Dr.

Chiappone.  *See* Tr. 1400.   It is further undisputed that at the June 29, 2011 ALJ hearing,

plaintiff admitted to being dishonest during his consultative examination with Dr. Chiappone.

*See, e.g.*, Tr. 106-07 (plaintiff testified that had not had alcohol for six or seven years, but

_____

[6]Plaintiff makes several references to a "Dr. Rodriguez" in his Statement of Errors.   It appears upon review
of plaintiff's citations, *see* Doc. 6 at 7, citing to Tr. 978-85 (RFC assessment of Dr. Ramirez), that this is a clerical

admitted he told Dr. Chiappone that he had consumed alcohol to excess multiple times in 2008).

Plaintiff specifically testified that when he found out that he was not going to a "regular doctor"

but to a "supposed shrink," that he "just told [Dr. Chiappone] any off-the-wall crap [he] could

think of." (Tr. 108). The ALJ asked plaintiff if he told Dr. Chiappone things that weren't true

and plaintiff responded, "Yeah, I sure did." (Tr. 108). In light of plaintiff's admission to

fabricating "all kinds of things" during his examination with Dr. Chiappone, the ALJ reasonably

determined that Dr. Rosch's opinions were entitled to only "some weight" given her reliance on

Dr. Chiappone's report based on "any off-the-wall crap [plaintiff] could think of." (Tr. 108).

The Court finds no error in how the ALJ weighed Dr. Rosch's opinions.

　　　*b. Dr. Kejriwal*

　　　The ALJ's decision to give "little weight" to the September 2010 RFC assessment

completed by Dr. Kejriwal is substantially supported. Though plaintiff argues that Dr. Kejriwal

is a treating physician and his opinion should have been given controlling or greater weight, the

undersigned finds that the ALJ gave "good reasons" as required by *Wilson* for rejecting the

opinion. While Dr. Kejriwal treated plaintiff from August 29, 2001 through February 20, 2002,

he did not treat plaintiff for nearly a decade until he examined him again on September 21, 2010.

(Tr. 1083-1104). Given this lapse in treatment, the ALJ reasonably determined that Dr.

Kejriwal's RFC assessment (Tr. 1105-08), dated September 21, 2010, was based entirely off this

last examination. The September 2010 examination revealed largely normal findings except for

limited range of motion in the left arm, pain in the neck area associated with the right arm, and

paresthesia. (Tr. 1084-85). Despite these moderate findings, Dr. Kejriwal opined that plaintiff

---

mistake. The Court infers that plaintiff intended to refer to Dr. Ramirez in making his arguments.

had extreme functional limitations including limits with gripping; not being able to lift any weight; and being incapable of walking/standing continuously for more than 15 minutes. (Tr. 1106-08).

The ALJ gave "little weight" to Dr. Kejriwal's opinion because it was inconsistent with the examination findings and appeared to be based exclusively on plaintiff's subjective reports. (Tr. 23). The evidence of record substantially supports the ALJ in this regard. Dr. Kejriwal's opinion that plaintiff has extreme lifting, walking, and standing limitations is entirely inconsistent with the above-noted examination findings. Notably, upon examination Dr. Kejriwal reported that plaintiff has no psychological symptoms, including no anxiety, no depression, and no sleep disturbances (Tr. 1085), but in his RFC opinion he reported that plaintiff has depression, anxiety, and sleep issues which limited his functional abilities. (Tr. 1108). These contradictions in the treatment notes coupled with the infrequent treatment are appropriate bases for discounting Dr. Kejriwal's opinion. *See* §§ 404.1527(c) and 416.927(c).

The ALJ gave "good reasons" for not adopting the extreme limitations provided by Dr. Kejriwal and thoroughly explained his rationale. *See Wilson*, 378 F.3d at 555. Thus, the undersigned finds no error in the ALJ's decision to give little weight to Dr. Kejriwal's opinion. Insofar as plaintiff argues that the ALJ erred by failing to engage in the full analysis required by *Gayheart*, with respect to first determining whether Dr. Kejriwal's opinions was entitled to controlling weight before applying the §§ 404.1527(c) and 416.927(c) factors, any error in this regard is harmless in light of the substantial evidence supporting the ALJ's determination that his opinion was entitled to "little weight."

14

### c. The nonexamining medical sources

Plaintiff asserts the ALJ should have given less weight to the opinions of Dr. Stock and Dr. Rudy because their opinions were based on an incomplete review of the record. Plaintiff argues that Dr. Stock's opinion was tendered without the benefit of seeing the positive Spurling and Neer signs and Dr. Rudy's opinion was tendered without reviewing any evidence from plaintiff's mental health treatment at Transitional Living. (Doc. 6 at 5, 7).

The Court finds the ALJ's decision to give "significant weight" to Dr. Stock's opinion on plaintiff's physical RFC is supported by substantial evidence; however, the ALJ erred in relying on Dr. Rudy's opinion in formulating plaintiff's mental RFC.

One of the factors the ALJ is to consider in weighing medical opinions is "the extent to which an acceptable medical source is familiar with the other information in [the] case record." 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6). A state agency reviewing doctor's opinion may be entitled to greater weight than that of a treating or examining doctor in certain circumstances, such as when the "State agency medical ... consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." *Blakley v. Comm'r*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). In *Blakley*, however, the ALJ's decision was reversed where the non-examining sources had not reviewed "much of the over 300 pages of medical treatment . . . by Blakely's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (internal quotation omitted). Therefore, under *Blakley*, the ALJ may credit the opinion of a state agency reviewing doctor who

15

has failed to review a complete record if he articulates the reasons for doing so and such reasons are supported by substantial evidence.

Here, although Dr. Stock's opinion was generated without review of the full record, the ALJ's decision to give it "significant weight" is substantially supported. Admittedly, Dr. Stock did not review evidence of the positive Spurling and Neer signs. (Tr. 818, 85). As discussed above, however, this clinical evidence does not, standing alone, demonstrate that plaintiff has functional limitations not accounted for by Dr. Stock's RFC assessment. Further, there is no medical opinion in the record that these clinical findings establish any additional functional limitations. *See* Tr. 226 (Dr. Rosch testified only that the Spurling's test was an "indicator" of nerve root impairment, not that this condition was established by the finding). Moreover, Dr. Stock's opinion, as found by the ALJ, is supported by other substantial clinical evidence of record.

Dr. Stock opined that plaintiff could lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday. (Tr. 882). Dr. Stock further opined that plaintiff could frequently stoop, kneel or crouch; occasionally climb ramp or stairs and crawl; but never climb ladders, ropes or scaffolds. (Tr. 883). Dr. Stock further limited plaintiff to occasional reaching in all directions on the right side only. (Tr. 884). These limitations are supported by and consistent with the examination results of record. *See* Tr. 774 (January 2008 functional capacity evaluation revealed that plaintiff could lift and carry up to 20 pounds and had limited overhead reaching ability); Tr. 849-51 (Dr. Langenderfer found that plaintiff had restricted right shoulder motion but no weakness and that the right rotator cuff

16

was well-healed).   Because the evidence Dr. Stock did not review would not have impacted

plaintiff's RFC and there is substantial evidence otherwise supporting Dr. Stock's opinion, the

ALJ reasonably determined to give this opinion "significant weight."   Accordingly, the

undersigned finds no error in this regard.

In contrast, the ALJ erred in giving "significant weight" to the opinion of state agency

psychologist Dr. Rudy because there is a significant amount of evidence that was not in the

record at the time of her review.   Dr. Rudy completed a Psychiatric Review Technique in June

2008 wherein she opined that plaintiff had mild limitations in his activities of daily living, mild

difficulties in maintaining social functioning, and mild difficulties in maintaining concentration,

persistence or pace.   (Tr. 867-80).   Dr. Rudy gave weight to Dr. Chiappone's opinion[7] noting

that plaintiff did not have a mental health treating source and his primary care physician did not

mention any difficulties with anxiety or depression and had not referred him to treatment.   (Tr.

879).   Dr. Rudy concluded that there was no evidence of any significant limitations caused by

plaintiff's psychological conditions.   (Id.).

However, plaintiff subsequently began mental health treatment at Transitional Living in

January 2009.   (Tr. 889-977, 1058-82, 1329-92).   At the time of his initial assessment, plaintiff

presented with a history of anxiety and depression, no energy to function, feeling nervous and

anxious with panic attacks, and poor sleep and appetite.   (Tr. 949).   Plaintiff was diagnosed

with major depressive disorder, given a GAF of 35[8], and referred for counseling/psychotherapy

---

[7]The Court notes that the ALJ's reliance on Dr. Rudy's opinion is also questionable given plaintiff's admission that he was dishonest during his examination with Dr. Chiappone.

[8]The DSM-IV categorizes individuals with scores of 31-40 as having "[s]ome impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood."   See DSM-IV at 32.

and medical-somatic services. (Tr. 960-61). The record includes additional evidence from plaintiff's treatment with social worker, Darcy Hanson, beginning in April 2009 to May 2011. (Tr. 1183-1310, 1329-1392). Ms. Hanson opined that plaintiff exhibited symptoms consistent with major depressive disorder and relied on the support of his treatment team to function. (Tr. 1301-10). Dr. Ramirez, plaintiff's treating psychiatrist at Transitional Living, opined in February 2010 that plaintiff had major depressive disorder and significant functional impairments. (Tr. 978-85). As this treatment post-dates Dr. Rudy's opinion, it is clear that she was not able to review the vast majority of plaintiff's mental health treatment records. Further, the ALJ failed to acknowledge the limited nature of Dr. Rudy's record review in giving her opinion "significant weight." *See* Tr. 23-24 (stating only that the ALJ found plaintiff to have the severe impairment of depression because he gave plaintiff's allegations the benefit of the doubt). Finally, the ALJ gave significant weight to Dr. Rudy's conclusions because they were "not directly contradicted by any approved source shown to be familiar with the Social Security Administration and occupational standards." (Tr. 23). Whether or not plaintiff's Dr. Ramirez is familiar with the Social Security Administration and occupational standards has absolutely no bearing on his status as plaintiff's treating psychiatrist. This statement by the ALJ therefore provides no support whatsoever for his decision to give "significant weight" to Dr. Rudy as her opinion was rendered without review of over 200 pages of mental health treatment records. Consequently, the undersigned finds that the ALJ's decision to give "significant weight" to Dr. Rudy's opinion is not substantially supported by the evidence and this matter should be reversed and remanded with instructions to the ALJ to reweigh Dr. Rudy's opinion consistent with the requirements of *Blakley* given the limited nature of her review.

### d. *Dr. Rogers*

Psychologist George Rogers, Ed.D., completed interrogatories and testified as a medical expert at three of the ALJ hearings. (Tr. 43-77, 135-61, 241-57, 1393-97). The ALJ gave "significant" weight to Dr. Rogers' interrogatory answers and "less" weight to his hearing testimony. Plaintiff asserts the ALJ erred by not crediting Dr. Rogers' testimony that plaintiff's "impairments equaled Listing Numbers 12.04(A) and (B)." (Doc. 6 at 10-11).

Plaintiff's representation on Dr. Rogers' testimony is misleading. Contrary to plaintiff's assertion, Dr. Rogers' testimony that plaintiff's impairments equaled Listing 12.04 was qualified and not based on the record as a whole; rather, his opinion was limited to two pieces of evidence that counsel for plaintiff focused on during cross-examination: treatment notes from plaintiff's case manager at Transitional Living and a third-party statement from plaintiff's former roommate. (Tr. 42-43). Dr. Rogers testified that the remaining evidence of record did not support the limitations suggested by the case manager's treatment notes and lay witness. (Tr. 43). *See also* Tr. 44 (Dr. Rogers clarified that he did not state that plaintiff equals a listing but that his case manager's treatment notes and third-party statement were consistent with equaling a listing); Tr. 53 (contrasting the "record in general" with the "two bits of information we're talking about); Tr. 255-56 (Dr. Rogers opined that record evidence contradicted or failed to support Dr. Ramirez findings that plaintiff had marked limitations resulting from his mental impairment). Thus, Dr. Rogers did not give an unqualified opinion based on the record as a whole that plaintiff's impairments equaled Listing 12.04. The ALJ recognized the limited context in which Dr. Rogers opined that plaintiff "equaled" Listing 12.04. (Tr. 24). The ALJ did not err by failing to find plaintiff equaled a Listing based on Dr. Rogers' testimony.

e.  *Dr. Ramirez*

Dr. Ramirez, plaintiff's treating psychiatrist at Transitional Living, completed a mental impairment questionnaire on plaintiff's behalf in February 2010.  (Tr. 978-85).  Dr. Ramirez reported that he saw plaintiff nine times between January 2009 and January 2010 for approximately 15 minutes each time.  (Tr. 980).  He diagnosed plaintiff with major depressive disorder and assigned a GAF score of 35.  *Id.*  Dr. Ramirez noted that plaintiff was active in his treatment and taking all prescribed medication.  *Id.*  According to Dr. Ramirez, mental status examinations have demonstrated that plaintiff has an inability to focus and concentrate for sustained periods of time, increased feelings of guilt and worthlessness, and a slight memory impairment, and lacks energy and motivation.  *Id.*  Dr. Ramirez believed that plaintiff's prognosis will remain the same for the next twelve months.  *Id.*  Dr. Ramirez opined that plaintiff would be unable to meet competitive standards in eight of the 16 mental abilities and aptitudes needed to do unskilled work and has no useful ability to function in seven mental abilities; would be unable to meet competitive standards in two of four mental abilities and aptitudes needed to do semiskilled and skilled work and has no useful ability to function in the remaining two; and is unable to meet competitive standards or has no useful ability to function in 4 of 5 abilities and aptitudes needed to do particular types of jobs.  (Tr. 982-83).  In support of his opinion, Dr. Ramirez noted plaintiff has difficulty following through and understanding tasks due to marked anxiety and nervousness and an inability to comprehend simple work details.  (Tr. 983).  Dr. Ramirez concluded that plaintiff has moderate restrictions in activities of daily living; marked limitations in maintaining social functioning; marked limitations in maintaining concentration, persistence, or pace; and experienced three episodes of decompensation, each of at

20

least two week duration within the past year. (Tr. 984). Dr. Ramirez further opined that plaintiff would be absent from work more than four days per month due to his impairments or treatment. (Tr. 985).

The ALJ gave "little weight" to Dr. Ramirez's opinion because "the objective medical evidence of record does not support the severity or frequency of limitation indicated by Dr. Ramirez." (Tr. 24). The ALJ stated that treatment records from Transitional Living do not show high levels of anxiety or comprehension difficulties. *Id.* As an example, the ALJ cited to a May 2010 treatment note reflecting plaintiff's report of good anxiety control and a stable mood. (Tr. 24, citing Tr. 1067). The Court's review of the entirety of the treatment records from Transitional Living does not provide substantial support for the ALJ's finding.

While plaintiff occasionally reported less anxiety as identified by the ALJ (*see* Tr. 1067), the psychotherapy progress notes are replete with plaintiff reports of difficulty coping with anxiety and managing his emotions requiring his therapist's assistance in "cognitive restructuring to address his negative thinking patterns which affect his overall mental status." (Tr. 906). For example, plaintiff reported anxiety in September 2009 and "difficulty re-framing negative thoughts," and admitted that stressors increase his lethargy and diminish his coping skills. (Tr. 907). Plaintiff consistently reported symptoms of anxiety, depressed mood, and self-harmful patterns throughout his treatment at Transitional Living. *See*, *e.g.*, Tr. 909 (September 2009 treatment notes); Tr. 918, 924 (August 2009 treatment notes); Tr. 940 (June 2009 treatment notes); Tr. 946 (April 2009 treatment notes); Tr. 1069, 1191 (April 2010 treatment notes); Tr. 1077 (February 2010 diagnostic assessment); Tr. 1202 (March 2010 treatment notes); Tr. 1209 (February 2010 treatment notes); Tr. 1337 (January 2011 treatment notes). The most recent

21

treatment records reflect that plaintiff was experiencing increased anxiety, poor overall hygiene and body odor, and racing thoughts; he also had a cluttered and unorganized apartment and had difficulty keeping up with his activities of daily living. (Tr. 1329-38). The ALJ's selective citation to portions of the treatment records supporting his opinion, while excluding any reference to the above evidence, does not fairly portray the evidence pertaining to plaintiff's mental health impairments. Further, this evidence from Transitional Living disproves the ALJ's assertion that Dr. Ramirez's opinion is not supported by notations of plaintiff's anxiety or comprehension difficulties.

Accordingly, the ALJ has failed to provide a "good reason" under *Wilson* for discounting Dr. Ramirez's opinion. Nor did the ALJ provide any indication that he considered the regulatory factors to be balanced in determining the weight to afford Dr. Ramierez's opinion, including the treating psychiatrist's specialty; the length, nature and extent of the treatment relationship and the frequency of examination; how consistent the opinion was with the record as a whole; and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. Therefore, this matter should therefore be reversed and remanded with instructions to the ALJ to reweigh Dr. Ramirez's opinion in consideration of the record evidence as a whole.[9]

3. Whether the ALJ's credibility determination is supported by substantial evidence.

Plaintiff argues the ALJ erred in assessing his credibility because his subjective reports of

---

[9] To the extent plaintiff also asserts the ALJ should have given greater weight to the opinion of his licensed therapist, Darcy Hanson, LISW (Doc. 6 at 12-13), the evidence from Ms. Hanson should be reconsidered in conjunction with Dr. Ramirez's opinion as it is apparent that Ms. Hanson and Dr. Ramirez were part of the same treatment team at Transitional Living.

pain are supported by objective medical findings. Plaintiff also argues that the ALJ erred in making his credibility finding by not addressing the effects of plaintiff's medication; Dr. Rosch's opinion that plaintiff's complaints were credible; or Dr. Rogers' testimony that plaintiff was not a malingerer. (Doc. 6 at 14-15).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the

credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination that plaintiff's subjective statements are not fully credible. The ALJ provided several reasons for discounting plaintiff's credibility: (1) plaintiff made several inconsistent statements and unsupported claims at the ALJ hearings; (2) plaintiff admitted to lying to Dr. Chiappone during his consultative examination, thus calling into question the veracity of all of his statements; (3) plaintiff made inconsistent statements regarding his participation in collecting scrap metal; and (4) the objective medical evidence does not support plaintiff's complaints of pain. (Tr. 21-22). Review of the record supports the ALJ's decision.

Plaintiff has made no attempt to address the first three reasons given by the ALJ for his credibility finding. As discussed above, plaintiff's own testimony demonstrates he was dishonest in reporting his symptoms to Dr. Chiappone. Plaintiff's testimony that he "just told [Dr. Chiappone] any off-the-wall crap [he] could think of" (Tr. 108) demonstrates that plaintiff intentionally misrepresented his symptoms to Dr. Chiappone. In light of plaintiff's blatant dishonesty, the undersigned finds that this reason alone is a sufficient basis to affirm the ALJ's credibility decision. To the extent plaintiff cites to the EMG findings, positive Spurling and Neer tests, and Dr. Rosch's testimony discussed above in support of his allegation that the objective evidence supports his physical impairments (Doc. 6 at 14), the fact that there may be substantial evidence supporting a contrary credibility finding does not warrant reversal. The ALJ's findings are not subject to reversal merely because there exists in the record substantial

24

evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The ALJ's credibility finding is supported by substantial evidence.

    4. <u>Whether the ALJ erred by relying on the VE's testimony</u>.

Plaintiff contends that the ALJ erred by relying upon flawed vocational testimony as the hypothetical questions presented to the VE failed to account for limitations supported by the evidence of record, including the opinions of Dr. Rudy, Dr. Rogers, and Dr. Ramirez. Given the Court's finding that the ALJ failed to properly weigh the medical opinions of Drs. Rudy and Ramirez, the ALJ's RFC finding is without substantial support in the record. Consequently, the hypothetical questions presented to the VE do not properly reflect plaintiff's impairments and/or limitations. The ALJ therefore erred by relying on this vocational testimony to carry his burden at Step 5 of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Because the ALJ's hypothetical questions failed to accurately portray plaintiff's impairments, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. Therefore, plaintiff's final assignment of error should be sustained.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir.

1994). This matter should be remanded for further proceedings, including a determination of the weight to be accorded to the opinions of Dr. Rudy and treating psychiatrist Dr. Ramirez, and an explanation on the record therefor; reconsideration of plaintiff's RFC; and vocational considerations consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _2/3/2014_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

FREDERICK G. BACK,                                      Case No. 1:12-cv-988
     Plaintiff,                                         Dlott, J.
                                                        Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

27